| United States District Court | Southern District of Texas |
|---|---|

| | |
|---|---|
| Jacqueline Marie Patterson, § § § Plaintiff, § § versus § § Houston Independent School District, et al., § § Defendants. § | Civil Action H-11-1984 |

# Opinion on Summary Judgment

1.  *Introduction.*

A worker who was fired when her employer eliminated her position believes that it fired her because she is old, disabled, black, and a woman. The employer will prevail.

2.  *Background.*

In 2007, Houston Independent School District hired Jacqueline Marie Patterson as a trainer in the personnel office and assigned her to the food-services department. From 2008 until August of 2010, Patterson applied for open positions in the district, but she never was interviewed.

In August of 2010, the district decided that it needed to eliminate unnecessary positions. The food-services department had three trainers at level 27: Patterson, Tonya Bowles, and Patrick Zink. Bowles – a black woman – trained technology workers, Zink – a white man – trained school workers, and Patterson trained non-school workers, like truck drivers and warehouse workers. Because the district hired Bowles in 2001 and Zink in 2005, Patterson was junior to them, having been hired in 2007.

On August 6, 2010, Mark Miranda and Chandra Bailey held a meeting with Patterson where they told her that she was being fired as part of a district-wide reduction in force. She would be paid through September 3, but she could not come to work.

3. *Case.*

After she was fired, Patterson filed her charge with the Equal Employment Opportunity Commission, alleging discrimination based on race. After the commission declined to sue, in May of 2011, she sued 16 defendants under at least 14 legal theories. Over the course of the litigation, the court has dismissed most of the defendants and theories. Patterson's remaining claims – against the district, Miranda, and Bailey – are:

    A.    She was fired and not promoted because of her age under the Fourteenth Amendment of the Constitution;

    B.    She was fired and not promoted because of her disability under the Fourteenth Amendment;

    C.    She was not promoted because of her sex and race under the Fourteenth Amendment and 42 U.S.C. § 1981; and

    D.    She was fired because of her sex and race under the Civil Rights Act of 1964, 42 U.S.C. § 1981, and the Fourteenth Amendment.

4. *Age Discrimination.*

The Age Discrimination in Employment Act precludes her suing for age discrimination under the Fourteenth Amendment.[1]

Even if she could sue under it, she has offered nothing in support of her legal theory; it is an allegation totally devoid of facts.

5. *Disability Discrimination.*

Setting aside whether the Americans with Disabilities Act precludes her suit under the Fourteenth Amendment, she has not articulated facts that are recognized as a claim. She says that she injured her wrist and knee when she lifted furniture and banged her knee into a desk in July of 2010. She complained to her supervisor – Lori Graffweg – who gave her some medicine for the pain.

A workplace injury is not a disability, and the law has no express requirement for a specific accommodation. Also she has not shown that Graffweg had the power to fire her, the authority to reject her applications, or even told another person about the injuries. Patterson

---

[1] LaFleur v. Texas Dept. of Health, 126 F.3d 758 (5th Cir. 1997).

never told another worker about them. The district could never have accommodated her "disability" or even considered it when it rejected her applications and fired her; she was diagnosed only after she was fired.

6.  *Promotion.*

During her time with the district, Patterson applied for twenty positions. She believes that the district rejected her because she is a black woman and that it gave those jobs to white men under the age of 40.

As the court has told her, the Civil Rights Act of 1868 prohibits racial discrimination only. Her claim for sex discrimination under the statute was dismissed.

Because her claims for discrimination must have been brought within two years of the rejection, her complaints about applications before May 25, 2009, are barred.

Except for one position – senior administrator of food services – Patterson has no idea whom the district hired. She has offered nothing – not a single fact – to show that she was qualified, much less more qualified than whoever got the jobs. Simply stated, Patterson does not know why she was rejected, and her belief that it was because she was black and female is an naked guess.

   A.  *Dave Richardson.*

She complains that after a meeting in November of 2007, Dave Richardson yelled at her, telling her that nobody wanted advice from a black woman. Assuming that to be true, she applied for 14 of the 20 jobs after January of 2009, long after the comment, and Richardson was not in charge of hiring for those jobs. She admits that she does not know if Richardson told anyone who had the power to reject her applications. She was fired two years and 8 months after the insult. With nothing more, a hostile comment is insufficient to turn her unhappiness into a claim.

   B.  *Tesha Foster.*

She has offered an e-mail and conversation with Foster, who said that Terry Grier – the superintendent of the district – called Patterson an "uncontrollable black female." The e-mail and conversation are hearsay within hearsay. The court struck both because she never told the commission about them, and she disclosed them in this litigation for the first time 22 months

after suing. She, of course, is a black female; that is a description, and she may be described as productive, as uncontrollable, or with another aspect of her performance at work without it being evidence of racial discrimination.

C.   *Hiring*

Patterson helped hire for other jobs in the district, where she was told to pull certain applications for interviews. She does not say that people told her to pull or not pull applications because of the applicant's sex or race. The hiring for those positions may have been arbitrary or gone to well-connected applicants who were "sleeping" with someone, but she cannot show that the district discriminated against a protected category for those jobs, much less for the jobs for which she applied.

She says that for every position she applied to, the district "withdrew" her application from the system without telling her. If true, it says nothing about the reason; Patterson has no idea who withdrew her applications or who got most of the jobs and why. Denying her application, without more, is not evidence of discrimination against her.

D.   *Certification.*

She says that she was repeatedly denied the opportunity to attend certification courses; with no facts about the supposed "white male counterparts" who were given professional development opportunities, it is an assertion with no support.

E.   *Senior Administrator.*

Patterson complains specifically that before she was fired, she applied to be the senior administrator in food services, which was given to Brian Giles, a white man. Her conclusion that she was more qualified than Giles is belied by the district's facts; she offers none. Just asserting that one is more qualified, without offering a fact to support it, means nothing.

He was the second-most-senior person with Aramark at the district and had managed an organization with many people. She had no operating experience and was third-level support staff. She did not have the experience for such a senior position and was not better qualified than Giles.

7. *Firing.*

During the summer of 2010, the district decided to remove positions to save money. The food-services department was moving its operations into a new building, and the district planned to have Patterson train non-school workers there. The department discovered that many of the non-school divisions did their own training and had no need for it at the central location. Because Patterson was the most junior trainer – and the least necessary, training warehouse workers and truck drivers – the department decided to eliminate her position. It says that its firing her was a calculated reduction in force that had nothing to do with her sex, race, or even the quality of her work.

Because Patterson did not check the box on her charge for sex discrimination, she may not sue for it under the Civil Rights Act of 1964. Even if she could, she has not shown facts that support her theory that she was fired because she is a black and female.

As she sees it, the district could have fired her only for a nefarious reason. She worked well, had positive evaluations, and had done nothing to warrant being firing. She is right; the district did not fire her because of something she did. It fired her because it wanted to reduce the number of positions. Its decision was in the best interests of the district and its students – not Patterson.

Because she does not have something more tangible to explain her firing than a reduction in force that she disbelieves, Patterson has accused a multitude of people of firing her unlawfully.

Just because one has a certain characteristic – like being from Connecticut – does not mean that when an employer lays off a worker without an explanation that is satisfactory to the worker that it was done because one is a Connecticuter. The law requires Patterson to show more than her immutable characteristics. She needs to show that the district fired her because of antipathy towards those characteristics. She can show an inference of hostility by having facts that undermine the district's explanation.

A. *Zink.*

Patterson declares that she was more qualified and a better worker than Zink – whom she accuses of playing computer games at his desk. He may have been lazy and may have benefitted from cronyism, but she has offered nothing to show that she was fired because she was black and female and he was retained because he was white and male. Saying that he played

games does not address his productivity. And of course what she says is gossip.

B. *Richardson.*

The comments by Richardson were almost three-years old and she cannot show that he fired her, that he fired because she is a black woman, that he told the people who fired her about his comments, or that those people used his comments to fire her because she is a black woman.

C. *Budget.*

She says that the department had no need to fire her because its budget was healthy. Even if the department could have kept her position, her complaints about the budget do not mean that she may sue many people for discrimination. The district does not need to be impecunious to eliminate positions and lay off workers. From the superintendent to the most junior worker, the district may choose to keep some workers and fire others; that is a policy decision that it is free to implement in the best interests of the students. So long as the district did not fire her for a discriminatory reason, the firing was legal. Challenging the budgetary rationale of the firing does not show discrimination.

D. *Seniority.*

She says that her firing conflicted with the district's policy as announced in an e-mail by Terry Grier – the superintendent – in April of 2010. She says that he affirmed that the district would not fire people based on years of experience, contradicting the seniority rule invoked by Miranda when he told her about the elimination of her position.

Grier wrote that the district would hire teachers based on talent instead of years of experience. Her reading of the e-mail is wholly unconnected to its text; it had nothing to do with how the district was going to fire people. The policy was about the hiring of teachers; it was that "practice" that "must continue."

8. *Miranda and Bailey.*

Since Patterson cannot show a viable claim for discrimination under any of her theories, she may not recover against Miranda and Bailey. Bailey was a witness to the meeting where Miranda told Patterson about the end of her position. Patterson indiscriminately and

inconsiderately sued numerous people, including a woman who had nothing to do with the decision to eliminate the position and was just there to observe. Miranda was merely acting on behalf of the district; suing him is redundant to the suit against it.

9.  Conclusion.

Jacqueline Marie Patterson is understandably upset that the district eliminated her job. That does not give her license to sue 16 defendants – unnecessary and unwarranted – under a grab-bag of legal theories. Her belief that the district fired her because of her race, sex, age, and disability is mistaken and wholly unsupported by the facts. All she has presented is conjecture and supposition; that is insufficient to sustain these claims.

Jacqueline Marie Patterson will take nothing from the Houston Independent School District, Mark Miranda, and Chandra Bailey.

Signed on June __5__, 2013, at Houston, Texas.

_____
Lynn N. Hughes
United States District Judge